UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: )
)
MARK T. HAZELTON and ) CHAPTER 12
SARAH R. HAZELTON )
)
Debtors ) Case No. 19-01537 RNO
)

**(Indicate if applicable)**
**(  ) MOTION TO AVOID LIENS**
**( X ) MOTION TO VALUE COLLATERAL**
**(  ) ORIGINAL PLAN**
**( X ) AMENDED PLAN (  4th)**

PLAN PROVISIONS

YOUR RIGHTS WILL BE AFFECTED

**If you oppose any provision of this plan you must file a timely objection. This plan may be confirmed and become binding on you without further notice or hearing unless a written objection is filed before the deadline stated on the Notice issued in connection with the filing of the plan.**

**DISCHARGE:**
The Debtors will seek a discharge of debts pursuant to Section 1228(a).

1. **PLAN FUNDING AND LENGTH OF PLAN**

   A. Debtors shall be responsible for funding the Plan. Plan distributions will commence the following month after the plan is confirmed. Payments by the Debtors shall be $4136 monthly for 36 months. Payments will be distributed as allowed under Chapter 12.
   B. Given that Debtors have historically sold excess dairy animals as a revenue source, debtors shall be permitted to sell excess livestock to fund the plan, provided the debtors maintain livestock numbers at or above the number of head listed on Schedule A/B. Debtors agree to continue to provide year end livestock numbers and general accounting with USDA.

C. All funds paid by debtors to the trustee pre-plan confirmation shall be used for the express use of post-confirmation plan distributions prescribed below. Trustee is currently holding $11,087
D. Debtors shall dedicate any unforeseen income to the Plan minus taxes and operating costs for executing the EQUIP contract and associated equipment or to purchase a no-till grain drill for their farming operation.

2. **SECURED CREDITORS**
   Secured Claims Paid According to Modified Terms. These amounts will be paid in the plan according to modified terms, and liens retained until entry of discharge or completion of modified terms. Any claim listed as no value will be treated as an unsecured claim. THE LIENS WILL BE LIMITED TO THE VALUE OF THE COLLATERAL ASSET IN THE PLAN OR AN ADVERSARY ACTION WILL BE FILED UNDER SECTION 506(a) TO DETERMINE THE EXTENT, VALIDITY, AND PRIORITY OF THE LIEN

A. Northwest Bank original mortgage for and collateral of the real property with value of $172,688 located at 339 Seymour Hill Road, Mansfield, PA 16933, Proof of Claim 5-1, principal of $130,357.12 at 6.375% annual interest re-amortized over 30 years bring a monthly principal and interest payment of $813.26. An amortization schedule is available upon request. In addition to the principal and interest, Northwest will receive $508.37 per month to cover the escrow account. The escrow amount may change over the lifetime of the plan and covers the taxes and insurance for the property. Northwest Bank will receive a combined total monthly payment of approximately $1,321.63 to satisfy Proof of Claim 5-1. Escrow changes will change this number over the Plan's terms. Payments will begin with confirmation of the Plan, be made pursuant to the Plan, and continue after completion of Plan through the end of the 30 year term.

B. Northwest Bank equity account, Proof of Claim 4-1, collateral of real property with value of $172,688 located at 339 Seymour Hill Road, Mansfield, PA 16933 with principal of $24,861.34 at 5.50% interest compounded monthly amortized over 30 years bring a monthly principal and interest payment of $141.16. An amortization schedule is available upon request. Payments will begin with confirmation of the Plan, be made pursuant to the Plan, and continue after completion of the Plan through the end of the 30 year term.

C. USDA Loans 4430-13 and 4420-14: $247,598.87 as of September 16, 2020 to be re-amortized over 15 years at 1.375% interest annually, for an approximate monthly payment of $1,532/month beginning the month following Plan confirmation. Due to the accrual of interest at the note rates from the petition date until Plan confirmation, FSA shall provide to the Trustee a statement of account showing the balance due as of the date the Plan is confirmed and the amount of the actual monthly payment to be paid by the Trustee for the duration of the 36 month

plan. After the 36 month plan, the Debtor will make monthly payments, as per the terms and rates set forth in this Plan, directly to FSA until the debt is paid in full.

The Debtor shall execute such other and further loan documentation as shall be reasonably required by FSA which shall be consistent with the terms of this Plan. In addition, FSA shall have and be permitted a valid, binding, enforceable and perfected continuing replacement, rollover lien and security interest in all collateral in which it holds a security interest pursuant to its existing loan documents with the Debtor, and such liens shall be deemed valid and perfected to the extent of FSA's pre-petition perfection as of the date of the confirmation of the plan by the Court, without the need for execution or filing of any further documents or instruments that would otherwise be required pursuant to applicable non-bankruptcy law.

Further, pursuant to the terms of the security agreement, Debtor agrees to provide FSA any additional reasonable documentation required, and to pay the cost(s), for filing a UCC continuation statement and/or renewing a lien on vehicles with titles, should it become necessary for FSA to do so during the pendency of the Plan. FSA will notify the Debtor of the need of such in writing. If Debtor fails to timely (in FSA's sole judgment) pay the cost(s), FSA will pay the costs and charge the amount to Debtor's account, and the amount will then accrue interest at the rate set out in Debtor's oldest outstanding promissory note associated with that security. The next Plan payment received by FSA after paying the cost(s) will be applied first against the cost(s) and then against the Plan payment, but such application will not cause the Debtor to be considered delinquent in Plan payments.

D. CNH principal of $19,800 with collateral being the CNH FP 230 Forage Harvester and CNH 824 corn head at 4% annual interest re-amortized over a 5 year term bring a principal and interest payment of $364.65. CNH payments will begin with confirmation of the Plan, be made pursuant to the Plan, and continue after the completion of the Plan through the end of the 5 year term.

**\*PLAN INDICATES THAT THE DEBTORS PROPOSE TO LIMIT THE LIEN OF THE CREDITOR IN THIS PLAN. CONFIRMATION OF THE PLAN SHALL CONSTITUTE A FINDING OF VALUATION PURSUANT TO SECTION 506(a). NO ADVERSARY COMPLAINT OR MOTION WILL BE FILED AND DEBTORS' EVALUATION OF THEIR EQUIPMENT, INVENTORY, LIVESTOCK, AND ASSETS SET FORTH IN SCHEDULE A/B PROPERTY SHALL BE CONCLUSIVE. IF THE CREDITOR WISHES TO CONTEST THE AVOIDANCE OR LIMIT, THE VALUE OF THE DEBTORS' EQUIPMENT, INVENTORY, LIVESTOCK, OR ASSETS, THE CREDITOR MUST FILE AN OBJECTION TO THIS PLAN. OTHERWISE, CONFIRMATION OF THIS PLAN WILL LIMIT THE LIEN AND AFFIX THE VALUE.**

E.  Surrender of collateral: NONE
F.  Payment of claim secured by mortgage/ lien.  The debtors own **real property used as a principal residence located at 339 Seymour Hill Road, Mansfield, PA 16933** which is subject to one or more mortgage liens.  All mortgage and/ or long-term lien claim balances survive the plan if not paid according to the terms of this plan.  This plan constitutes a modification of the mortgages held by Northwest and USDA.

3. **PRIORITY CREDITORS**

A.  Counsel, The law firm of Mitchell A Sommers, Esquire, P.C., will be paid $100 monthly as compensation for all legal fees.  Attorney's fees will not exceed $5000.00 unless by Court Order.  Compensation shall be made in accordance with the Court's order appointing counsel as of July 6, 2020.

B.  The Chapter 12 Trustee ("Trustee") shall be compensated by commission payable to the Chapter 12 Trustee at 5% of all monies paid through the plan and distributed by the trustee in accordance with 11 USC 326 (b); in addition to the Trustee's commission, 5% of the monies paid through the plan shall be allocated for the Trustee's out of pocket costs and expenses, including for the Trustee's attorneys' fees.  Trustee will be paid $371.72 monthly.

C.  All taxes regarding the property at 339 Seymour Hill Road, Mansfield, PA 16933 are current.  Future tax liabilities from this property are to paid by Northwest from escrow.

D.  Annual insurance for the property at 339 Seymour Hill Road, Mansfield, PA 16933 is escrowed and current.  Future insurance premiums will be paid by Northwest from escrow.

4. **UNSECURED CLAIMS**

A.  Claims of Unsecured Nonpriority Creditors Specially Classified
   a.  Spector Gadon & Rosen ("SGR") with molded judgment of $68,660.35 against Mark Hazelton only recorded in Philadelphia County Court of Common Pleas, is a junior lien as to the secured creditors, and will be paid $300 monthly in the Plan as settlement of all claims or counterclaims against any or all of the Debtors.  SGR will be compensated entirely through the Plan.

B.  Claims of General Unsecured Creditors.  The debtors estimate that $0 will be available for distribution to other unsecured creditors.  The debtors calculate that a minimum of $0.01 must be paid to unsecured creditors in order to comply with the liquidation test for confirmation.  The debtors propose a 100% distribution for unsecured creditors that make a timely filing of their claims, and whose claims are not subject to objection by the debtors.

5. **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A. Seneca Resources Company, LLC ("Seneca") Oil Mineral and Gas Lease on 54.4 acre farm: REJECT

B. EQIP: Re-affirmed with contingency

   As the EQIP contract will likely have a positive impact on the Debtors' equity and sustainability, Debtors reaffirm the EQIP contract subject to a contingency with the contingency of securing funding for the Debtors' portion of the EQIP contract by December 31, 2021.  Debtors' agree to either 1) request cancellation of the EQIP contract by January 15, 2022 should funding not be secured by December 31, 2021, barring an amendment to the Plan approved by this court or 2) confirm their intent with USDA-NRCS by January 15, 2022 to reaffirm and extend the EQIP contract .  USDA-NRCS agrees to waive all fees and/or damages associated with the contract cancellation should the contract be cancelled in response to a request received by January 15, 2022.  If Debtors do not inform USDA-NRCS of their intentions to continue the contract or not by January 15, 2022, USDA-NRCS shall retain authority to terminate the contract as provided by regulation and in accordance with contract provisions.  Should Debtors' secure funding, work originally scheduled for 2019, 2020, and 2021 will be moved to completion in years 2022, 2023, and 2024 respectively.  Debtors agree to sign an "agreement covering non-compliance with provisions of conservation program contract" and contract modification no later than January 31, 2022, which would formalize the revised timeline and practices to be implemented.  As part of that agreement, USDA-NRCS would retain all applicable rights to terminate the contract for subsequent non-compliance as described in regulation and contract appendix. Debtors have already completed 2018's scheduled EQIP portion in 2018.  All other contents of the EQIP Contract will remain in effect.  If this bankruptcy is dismissed prior to January 31, 2022 and/or a new agreement and contract modification has not been signed by Debtors, the terms of the EQIP contract shall be the original terms as put in place prior to the bankruptcy filing.

.

6. **REVESTING OF PROPERTY: (CHECK ONE)**
   ( **X** )  Property of the estate will vest in the debtors upon confirmation
   (     )  Property of the estate will vest in the debtors upon closing of the case

7. **OTHER PLAN PROVISIONS**

A. Confirmation of the plan shall impose an affirmative duty on the holders and/ or servicers of any claims secured by liens, mortgages and/ or deeds of trust on the principal residence of the debtors to do the following:

(1) Apply the post-petition monthly mortgage payments made by the debtor to the post-petition mortgage obligations as provided for by the terms of the underlying mortgage note.
(2) Notify the debtors, this Court, the Chapter 12 Trustee, and debtors' counsel, in writing, of any change in the property taxes and/ or the property insurance premiums that would either increase or reduce the escrow portion, if any, of the monthly mortgage payments and the effective date of any such adjustment not less than 60 days in advance of such change or at such time as the change becomes known to the holder if the change is to be implemented in less than 60 days.
(3) Within 60 days after receipt of written request made by the debtors to the servicer or mortgage lender, with a copy served upon its counsel, the servicer or mortgage lender shall provide debtors and their counsel a statement detailing the following amounts paid by the debtors post-petition:
   a. All payments applied to the principal balance;
   b. All payments applied to interest;
   c. All payments applied to any escrow account;
   d. All payments applied to any pre-petition arrearage claim and the remaining balance;
   e. All fees and charges alleged to have accrued post-petition, along with an explanation thereof,
   f. A statement of any monies placed into suspense and an explanation of such action.

The statement may be in the form of a post-petition ledger prepared by the servicer or lender provided the documents used to prepare same are also provided. The debtors may (i) challenge this information by filing a motion with the Court, to be served upon the holder and the Trustee, (ii) propose a modified plan to provide for additional amounts that the debtor acknowledges or the Court determines are due, or (iii) take no action at all. To the extent that the amounts set forth are not determined by the Court to be invalid or are not paid by the debtor through a modified plan, the right of the holder to collect those amounts will be unaffected.

B. Payment of the debt by the Chapter 12 trustee shall constitute timely payment. No late charges may be applied to any of the debts included in the within plan payments
C. Upon confirmation of the plan this document shall be filed with the recorder of deeds of Tioga County Pennsylvania and it shall constitute a modification of the mortgage the debtors owe.

**8. ORDER OF DISTRIBUTION**
Payments from the Plan will be made by the trustee in the following order:
Level 1: priority claims, pro rata
Level 2: debtors' attorney fees .
Level 3: secured claims, pro rata
Level 4: specially classified unsecured claims

Case 4:19-bk-01537-RNO    Doc 93    Filed 10/09/20    Entered 10/09/20 10:40:03    Desc
Main Document      Page 6 of 7

Level 5: general unsecured claims
Level 6: untimely filed unsecured claims which the debtor has not objected

WHEREFORE, debtors respectfully request this 4th Amended Chapter 12 Plan be confirmed.

Date:                                    Respectfully Submitted,

/s/ Mark Hazelton_____             s/Mitchell A. Sommers
Debtor                                   Mitchell A. Sommers, Esquire PC 38505
                                         Attorney for Debtors
                                         115 S. State Street, Suite 201
                                         PO Box 836
                                         Brownstown, PA 17508
/s/ Sarah Hazelton_____             (717) 733-6607
Debtor                                   msommers@ptd.net